**IN THE UNITED STATES DISTRICT COURT01**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **EXPEDITED** | § | |
| **SERVICEPARTNERS, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 7:22-cv-00103-O** |
| | § | |
| **1011 RAM FAIRFIELD AMA,** | § | |
| **LLC, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

**<u>OPINION AND ORDER</u>**

Before the Court are Defendants' 1011 Ram Fairfield AMA, LLC and Daxa "Mina" Patel's (collectively "RFA") Motion for Summary Judgment (ECF No. 75), filed June 19, 2023; and Plaintiff's Expedited Service Partners ("ESP") Motion for Partial Summary Judgment on Counterclaims (ECF No. 101), filed August 21, 2023. After consideration of the Motions, responsive briefing, and the applicable law, the Court **DENIES** RFA's Motion and **GRANTS in part and DENIES in part** ESP's Motion.

**I.     BACKGROUND**

In mid-February 2021, Texas experienced a winter storm that brought snow, ice, and record-low temperatures to the state. This storm caused water pipes at RFA's hotel in Wichita Falls (the "Fairfield") to burst.[1] The Fairfield was subsequently closed, and all reservations were canceled.[2] At the same time, the entire state of Texas was experiencing an ongoing winter storm. In response, the Governor of Texas and Wichita County Judge issued emergency declarations.[3]

---

[1] RFA's Resp. to Mot. for Summ. J. 4, ECF. No. 108.
[2] *Id.* at 5.
[3] *Id.*

Shortly after the storm, RFA hired Amarillo Steam Team, LLC ("AST") to perform remediation work on the Fairfield. On May 22, 2021, RFA terminated AST, and contracted with Plaintiff ESP.[4]

When ESP came to the job site, it discovered that the Fairfield's furniture had been loaded into storage containers that were not temperature controlled, which caused some furniture such as mattresses and wood furniture to be destroyed.[5] But some furniture, such as fixtures, coffee pots, refrigerators, and televisions remained undamaged.[6] RFA alleges that ESP disposed of a significant portion of the Fairfield's undamaged property.[7]

ESP, on the other hand, asserts that it completed the work in a good workmanlike manner and that it took great care to separate salvageable items from unsalvageable items, which was confirmed by a RFA corporate representative and a representative of RFA's insurer.[8] Following completion of the work and approval by RFA, ESP submitted a copy of its invoices to RFA, Patel, and RFA's insurer.[9] RFA's insurer subsequently issued a joint check to RFA and ESP for payment of ESP's services.[10] After receiving the check, RFA and/or Patel deposited it with Centennial Bank f/k/a Happy State Bank ("Happy State Bank"), failing to have ESP endorse the check.[11] RFA and/or Patel have since spent the entire joint check without ESP's permission.[12] ESP has not received payment of any kind for the work it performed on the Fairfield.[13]

On October 13, 2023, ESP filed this lawsuit alleging that RFA failed to pay ESP for the work it performed on the Fairfield and filed a complaint in this Court against RFA and Happy

---

[4] *Id.* at 4.
[5] *Id.* at 8.
[6] *Id.*
[7] *Id.*
[8] ESP's Mem. in Supp. of Mot. for Partial Summ. J. 1–3, 12, ECF No. 95-3.
[9] *Id.* at 2.
[10] *Id.* at 3.
[11] *Id.*
[12] *Id.* at 4.
[13] *Id.*

State Bank for claims of (1) breach of contract, (2) failure to pay, (3) unjust enrichment, (4) foreclosure of liens against RFA, (5) promissory estoppel, (6) negligence by Happy State Bank, and (7) conversion by Happy State Bank.[14] On May 22, 2023, RFA filed counterclaims against ESP for (1) conversion, (2) negligence, (3) intentional tort, (4) breach of contract, (5) deceptive trade practices, (6) violation of Texas Business and Commerce Code Chapter 58, (7) slander of title, and (8) removal of cloud to quiet title, as well as various affirmative defenses.[15] Both parties have now moved in cross motions for summary judgment, which are now ripe for the Court's consideration.[16]

## II.   LEGAL STANDARD

The Court may grant summary judgment when the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is not "a disfavored procedural shortcut," but rather an "integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotation marks omitted).

"[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant must inform the court of the basis of its motion and demonstrate from the record that no genuine dispute as to any material fact exists. *See Celotex*, 477 U.S. at 323. "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner

---

[14] ESP's Compl. 7–13, ECF No. 1.
[15] RFA's Am. Answer & Countercl. 9–15, ECF No. 70.
[16] RFA's Mot. for Summ. J., 1, ECF No. 75; ESP's Mem. in Sup. of Mot. for Partial Summ. J. 1, ECF No. 95-3.

in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

On cross-motions for summary judgment, a court "review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001). "Moreover, a court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013). And if there appears to be some support for disputed allegations, such that "reasonable minds could differ as to the import of the evidence," the court must deny the motion for summary judgment. *Anderson*, 477 U.S. at 250–51. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni v. General Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).

## III.   ANALYSIS

On June 19, 2023, RFA filed a motion for summary judgment contending that they should prevail on all claims asserted by ESP because the contract with ESP is allegedly against public policy, illegal, and void pursuant to Chapter 58 of the Texas Business and Commerce Code.[17] Two months later, ESP filed their cross motion requesting summary judgment as to all counterclaims asserted by RFA.[18] The Court first addresses RFA's motion for summary judgment.

---

[17] RFA's Mot. for Summ. J. 10, ECF No. 75.
[18] ESP's Mem. in Sup. Of Mot. for Partial Summ. J. 1, ECF No. 95-3.

A.      **RFA's Motion for Summary Judgment**

Defendants state that "[t]he Court need not determine all of the listed disputed issues" because disaster remediation contracts must be in writing and contain specific statutory warning language.[19] In other words, Defendants sole argument for summary judgment is the lack of a written contract and absence of certain statutorily required language renders any contract between ESP and RFA null and void and illegal.[20] The Court disagrees.

First, the contract between ESP and RFA is not null and void. In Texas, disaster remediation contracts are governed by Chapter 58 of the Texas Business and Commerce Code. Section 58.003(a)–(b) requires that a contract for disaster remediation be in writing and include specified statutory language. TEX. BUS. & COM. CODE § 58.003(a)–(b). However, a violation of the Chapter 58 does not render a contract void. Instead, § 58.004 provides that violation of Chapter 58 is a "false, misleading, or deceptive trade practice" under the Texas Deceptive Trade Practices Act ("DTPA"). *Id.* § 58.004 (citing *id.* § 17.46) In an action for violation of the DTPA, a plaintiff can recover economic damages plus mental-anguish damages. § 17.50(b)(1). But a violation of the DTPA does not render a disaster remediation contract void and RFA could not cite a single case that supports this proposition. Instead, RFA only points to disanalogous cases, which involved statutes that specifically voided contracts that violated the relevant statute. For example, in *Atwood Oceanics Inc. v. Zust Bachmeier of Switzerland*, the court voided an insurance contract that required notice of injury in less than 90 days under the Texas Civil Practice and Remedies Code. 248 Fed. App'x 562, 563 (5th Cir. 2007) (per curiam). However, § 16.071(a) of the Texas Civil Practice and Remedies Code specifically states that "[a] stipulation that requires notification within less than 90 days is void." TEX. CIV. PRAC. & REM. CODE § 16.071(a). If the Texas legislature

---

[19] RFA's Mot. for Summ. J. 10, ECF No. 75
[20] *Id.*

wanted to void contracts under Chapter 58 of the Texas Business and Commerce Code, it could have done so. But the fact that it did not is instructive. Therefore, the contract between ESP and RFA is not void due to any alleged violation for the DTPA.

Second, the contract is not illegal. An illegal contract is one in which the parties undertake what the law forbids. *Franklin v. Jackson*, 847 S.W.2d 306, 309 (Tex. App.—El Paso 1992, writ denied). "'A contract to do a thing which cannot be performed without a violation of the law is void.'" *Id.* (quoting *Tex. Emp'rs' Ins. Ass'n v.* Tabor, 283 S.W. 779, 780 (Tex. Comm'n App. 1926). Because the contract violates the law, it imposes no legal obligation on the parties. *Miller v. Long-Bell Lumber Co*., 222 S.W.2d 244, 246 (Tex. 1949); *Franklin*, 847 S.W.2d at 309. But, "a contract that could have been performed in a legal manner will not be declared void because it may have been performed in an illegal manner*." Franklin*, 847 S.W.2d at 310 (citing *Lewis v. Davis*, 199 S.W.2d 146, 148–49 (1947)). Here, the contract between ESP and RFA was for disaster remediation services—not to commit and illegal act—and, therefore, is not void.

Since RFA offers no other reasons for why they are entitled to summary judgment on ESP's claims, the Court must deny RFA's Motion for Summary Judgment. For the reasons stated above, Defendants' Motion to Dismiss is **DENIED.**

**B.      ESP's Motion for Summary Judgment**

ESP requests summary judgment as to all of RFA's counterclaims, contending that as matter of law (1) RFA cannot prove that ESP wrongfully converted RFA's property; (2) RFA's negligence counterclaim should be dismissed under the economic loss rule; (3) ESP did not intend to destroy or harm RFA's property; (4) the DTPA does not apply to RFA's counterclaims; (5) RFA's breach of contract claim should be dismissed; and (6) ESP's lien is valid. ESP also seeks summary judgment on some of RFA's affirmative defenses.[21] The Court will address each in turn.

**1.  RFA's Conversion Counterclaim**

A cause of action for conversion contains four elements:

(1) the plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) the defendant, unlawfully and without authorization, assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, the plaintiff's rights; (3) the plaintiff made a demand for the property; and (4) the defendant refused to return the property.

*Guillory v. Dietrich*, 598 S.W.3d 284, 292 (Tex. App.—Dallas 2020, pet. denied) (citing *Wise v. SR Dallas, LLC*, 436 S.W.3d 402, 412 (Tex. App.—Dallas 2014, no pet.)).

ESP seeks summary judgment against RFA on the conversion counterclaim arguing that there is no evidence to raise a genuine issue of material fact that ESP wrongfully exercised dominion and control over RFA's property.[22] In support of its argument, ESP claims that its project manager was instructed to go through the storage boxes and determine salvageable versus unsalvageable contents, and that RFA's insurer agreed with ESP's assessment of what was

---

[21] ESP's Mem. in Supp. of Mot. for Partial Summ. J. 1, 5–16, ECF No. 95-3.
[22] *Id.* at 16–18.

7

salvageable.[23] ESP next asserts that at no time did ESP wrongfully exercise dominion or control over RFA's property.[24] On the other hand, RFA claims that ESP threw away valuable property, citing to the testimony of Fairfield's assistant manager, Jessica Coffey.[25] This means RFA has successfully pointed to specific evidence that highlights a dispute of material fact on the issue of conversion. Therefore, the Court cannot grant summary judgment in favor of ESP on RFA's counterclaim for conversion.

ESP's motion for summary judgment on the conversion counterclaim is **DENIED.**

### 2. RFA's Negligence Counterclaim

As its second counterclaim, RFA alleges that ESP negligently destroyed or disposed of over $383,000 of RFA's property.[26] ESP seeks summary judgment on this claim, alleging that (1) RFA has not provided evidence to establish a genuine issues of material fact and (2) the economic loss rule precludes RFA's recovery.[27] The Court disagrees with ESP.

As an initial matter, RFA and ESP disagree about whether ESP threw away valuable property. Thus, a genuine issue of material fact exists. Second, the economic loss rule does not bar recovery in this case.

Under Texas law, the rule prohibits recovery in tort for economic losses resulting from a party's failure to perform under as contract when the alleged harm consists of *only* the economic loss of the expected contract. *Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) (per curiam). Texas courts have defined economic loss as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of

---

[23] *Id.* at 6.
[24] *Id.*
[25] RFA's Resp. to ESP's Mot. For Summ. J. & Br. in Supp. 20, ECF No. 108.
[26] RFA's Am. Answer & Countercl. 9, ECF No. 70.
[27] ESP's Mem. in Supp. of Mot. for Partial Summ. J. 6–8, ECF No. 95-3.

profits—without any claim of personal injury or damage to other property." *Bass v. City of Dallas*, 34 S.W.3d 1, 9 (Tex. App.—Amarillo 2000, no pets.) (cleaned up). If the alleged injury is only due to a party's failure to fulfill its contractual obligation, the rule precludes recovery of economic losses in tort. *Eagle Oil & Gas Co. v. Shale Expl., LLC*, 549 S.W.3d 256, 268 (Tex. App.—Houston [1st Dist.] 2018, pet. dism'd).

The economic loss rule does not, however, bar all tort claims that arise from a contract. *Chapman Custom Homes*, 445 S.W.3d at 718. "[A] claim sounds in contract when the only injury is economic loss to the subject of the contract itself." *1/2 Price Checks Cashed v. United Auto. Ins. Co.*, 344 S.W.3d 378, 387 (Tex. 2011). When a service contract—like the contract between RFA and ESP, is in dispute—"the subject matter of the contract generally does not include other property that is not part of the contract." *Flying J Inc. v. Meda, Inc*., 373 S.W.3d 680, 686 (Tex. App.—San Antonio 2012, no pet.). "Even if the matter in dispute is the subject of a contract, a party may elect a recovery in tort if the duty breached stands independent from the contractual undertaking, and the alleged damages are not solely the result of a bargained-for contractual benefit." *Eagle Oil & Gas*, 549 S.W.3d at 268.

In this case, the economic loss rule does not preclude recovery. ESP had a contractual duty to perform specific services under the remediation contract, as well as an independent duty not to negligently damage RFA's property. Because RFA alleges that ESP's incompetent services may have damaged its salvageable property, ESP "may be liable for that negligence in tort." *Thomson v. Espey Huston & Assocs., Inc*., 899 S.W.2d 415, 420–22 (Tex. App.—Austin 1995, no writ). For the reasons stated above, ESP's motion for summary judgment on RFA's negligence counterclaim is **DENIED.**

### 3. RFA's Intentional Tort Counterclaim

ESP next claims that it is entitled to summary judgment on RFA's intentional tort counterclaim because ESP examined items to determine if they were salvageable, described the salvageable items, and created detailed reports about damaged items.[28] This cause of action requires that ESP acted intentionally to inflict some kind of harm on RFA. *See Warwick Towers Council of Co-Owners ex rel. St. Paul Fire & Marine Ins. Co. v. Park Warwick, L.P.*, 298 S.W.3d 436, 447 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (stating that an intentional tort "involves an intent to commit an act that violates a property right, or would be practically certain to have that effect, although the actor may not know the act he intends to commit is such a violation"). ESP surmises that because its process only destroyed non-salvageable property there cannot be an intentional tort.[29] On the other hand, RFA claims that ESP intentionally removed and destroyed salvageable property.[30] Therefore, because summary judgment evidence does not eliminate genuine fact disputes over ESP's treatment of RFA's property, summary judgment is inappropriate. For these reasons, the Court **DENIES** ESP's motion for summary judgment with respect to this intentional tort counterclaim.

### 4. RFA's DTPA Counterclaims

RFA also brings various claims under the DTPA against ESP.[31] However, the DTPA does not apply to RFA's claims. Section 17.49(g) of the Texas Business and Commerce Code exempts transactions exceeding $500,000 from the DTPA. "The purpose of this exemption is to maintain the DTPA as a viable source of relief for consumers in small transactions and to remove litigation between businesses over large transactions from the scope of the DTPA." *East Hill Marine, Inc.*

---

[28] ESP's Mem. in Supp. of Mot. for Partial Summ. J. 9, ECF No. 95-3.
[29] *Id.*
[30] *Id.*
[31] RFA's Am. Answer & Countercl. 10–11, ECF No. 70.

*v. Rinker Boat Co.*, 229 S.W.3d 813, 820 (Tex. App.—Fort Worth 2007, pet. denied). Here, the total costs incurred by RFA exceed $500,000. ESP's portion of the project exceeds $400,000 and AST's services cost approximately $1.6 million.[32] Under Texas law, the amount of costs incurred is determined by "'either a benefit to the promisor or a detriment to the promisee.'" *Citizens Nat'l Bank v. Allen Rae Invs., Inc*, 142 S.W.3d 459, 473 (Tex. App.—Fort Worth 2004, no pet.) (quoting *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 496, (Tex. 1991)). Although ESP's portion of the project does not rise to the $500,000 threshold, the total detriment RFA incurred on the project far exceeds $500,000. Accordingly, the Court **GRANTS** ESP's motion for summary judgment for all DTPA claims.

### 5. Breach of Contract

RFA complains that ESP did not complete its work in a good workmanlike manner, therefore breaching the contract.[33] RFA claims that ESP did not complete the project in a workmanlike manner because ESP destroyed RFA's salvageable property. Once again, the crux of this issue is centered on the factual dispute about whether ESP treated RFA's salvageable property appropriately, thus, making summary judgment inappropriate. ESP's motion for summary judgment on the breach of contract claim is **DENIED.**

### 6. RFA's Counterclaims for Slander of Tile and Quiet Title

RFA also asserts a counterclaim against ESP for slander of title.[34] The elements of slander of title are (1) the uttering and publishing of disparaging words; (2) that they were false; (3) that they were malicious; (4) that special damages were sustained as a result; and (5) that plaintiff possessed an interest or estate in the property slandered. *Associates Inv. Co. v. Tyler*, 378 S.W.2d

---

[32] ESP's Mem. in Supp. of Mot. for Partial Summ. J. 10, ECF No. 95-3.
[33] RFA's Am. Answer & Countercl. 10, ECF No. 70.
[34] *Id.* at 12.

717, 718 (Tex. Civ. App.—San Antonio 1964, no writ). Here, RFA alleges that ESP filed a lien on RFA's property but is not entitled to that lien because it does not owe ESP the debt that ESP claims is the basis for the lien. And that ESP's lien caused RFA the loss of a specific sale of the hotel.[35] Under Texas law, a lien may be considered a disparaging statement that caused a sale to be lost. *Tarrant Bank v. Miller*, 833 S.W.2d 666, 667–68 (Tex. App.—Eastland 1992, writ denied) (holding a bank's lien on a plaintiff's property constituted disparaging statement even though it was unenforceable). Here, ESP contends that it had legitimate reasons for filing the lien because ESP was not paid for services it performed for RFA and that there was no malice held by ESP when it filed the lien. On the other hand, RFA asserts that because ESP overcharged RFA and damaged RFA's property, it does not owe ESP the amount due to which ESP's lien attached. Therefore, the Court **DENIES** ESP's motion for summary judgment with respect to these counterclaims because the summary judgment evidence does not eliminate a fact dispute regarding slander of title and quiet title.

## C.  RFA's Affirmative Defenses

ESP also moves for summary judgment on RFA's affirmative defenses of estoppel, offset, intentional misconduct of Mount Hawley Insurance Company, and Chapter 58 of the Texas Business and Commerce Code. At the outset, the Court **GRANTS** ESP's motion for summary judgment with respect to RFA's affirmative defense based on Chapter 58 of the Texas Business and Commerce Code. As noted above, the contract between ESP and RFA is not void due to any alleged violation for the DTPA, making Chapter 58 inapplicable. The Court will address the remaining affirmative defenses in turn.

---

[35] *Id.*

### 1. Estoppel

A party asserting an estoppel defense has the burden of establishing: (1) a false representation or concealment of material facts; (2) made with actual or constructive knowledge of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations. *Royalco Oil & Gas Corp. v. Stockhome Trading Corp.*, 361 S.W.3d 725, 733 (Tex. App.—Fort Worth, 2012, no pet.). The party claiming estoppel must have used due diligence to ascertain the truth of the matters upon which he relied in acting to his detriment. *Barfield v. Howard M. Smith Co.*, 426 S.W.2d 834, 838 (Tex. 1968). A party must also justifiably rely on the misrepresentation. *Bluebonnet Sav. Bank, F.S.B. v. Grayridge Apartment Homes, Inc.*, 907 S.W.2d 904, 909 (Tex. App.—Houston [1st Dist.] 1995, writ denied).

The Court finds that RFA has not carried its burden in establishing each element of its estoppel defense. First, RFA fails to show there is a genuine issue of material fact as to whether ESP made a false representation. As noted above, RFA alleges that ESP damaged its property. However, RFA provides no evidence that ESP misrepresented its actions surrounding the damaged property. RFA does not provide any evidence that ESP concealed the fact that it was removing and disposing of RFA's property. Second, RFA makes no showing that it did not have knowledge of ESP's conduct. In fact, RFA admits that its on-duty manager "took note that apparently undamaged items were being thrown away but did not confront ESP about it."[36] Based on the foregoing, the Court finds that RFA's equitable estoppel defenses fail. ESP's motion for summary judgment on RFA's equitable estoppel defense is **GRANTED.**

---

[36] RFA's Resp. to Mot. for Summ. J. 8, ECF No. 108.

### 2. Offset

RFA argues that the value of ESP services should be offset by the loss ESP caused RFA by removing salvageable property from the Fairfield.[37] "The right of offset is an affirmative defense which must be pleaded and proved by the party asserting it." *Zuniga v. Velasquez*, 274 S.W.3d 770, 774 (Tex. App.—San Antonio 2008, no pet.) (citing *Brown v. Am. Transfer & Storage Co.*, 601 S.W.2d 931, 936 (Tex. 1980)). As noted above, a genuine issue of material fact remains concerning ESP's alleged removal and destruction of RFA's property. Accordingly, the Court **DENIES** ESP's motion for summary judgment with respect to RFA's right to offset.

### 3. Intentional Misconduct of Mount Hawley Insurance Company

Finally, in its counterclaim RFA "asserts that any damages caused to ESP were caused by negligent or intentional misconduct of Mount Hawley Insurance Company, ESP, or other parties and not [RFA]."[38] RFA provides no summary judgment evidence that Mount Hawley Insurance Company engaged in negligent or intentional misconduct. Thus, ESP's motion for summary judgment with respect RFA's affirmative defense of intentional misconduct by Mount Hawley Insurance Company is **GRANTED.**

## IV.    CONCLUSION

For the reasons stated above, RFA's Motion for Summary judgment is **DENIED** in its entirety and ESP's Motion for Partial Summary Judgment is **GRANTED in part** and **DENIED in part**. Specifically, the Court **GRANTS** summary judgment in favor of ESP on RFA's DTPA counterclaims, as well as RFA's affirmative defenses of estoppel, the DTPA, and intentional misconduct of Mount Hawley Insurance Company.

**SO ORDERED** on this **1st day** of **November, 2023.**

---

[37] *Id.* at 26.
[38] RFA's Am. Answer & Countercl. 6, ECF No. 70.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**